### TIERNEY *v.* TIERNEY.

1. DIVORCE—HABITUAL DRUNKENNESS — EVIDENCE—HUSBAND AND WIFE.

    Evidence *held*, not to establish the charge of complainant in divorce proceedings that her husband was an habitual drunkard.[1]

2. SAME—EXTREME CRUELTY.

    Nor did testimony that defendant indulged in intoxicating liquors, that he refused complainant money upon certain occasions and was indifferent to her, establish extreme cruelty, where it appeared that he was 49 years old at the time of the marriage and she was 27, that the motive for her entering

[1] Who is an habitual drunkard within the meaning of divorce laws, see note in 6 L. R. A. (N. S.) 914

the marriage relation was not sentimental, that he had furnished complainant sufficient support, and that she had reason to know of his want of affection before marrying him.

3. SAME—IMPOTENCY.

Evidence *held*, to support the conclusion of the trial judge that the charge of impotency was not established by a preponderance of the evidence.

Appeal from St. Clair; Tappan, J.   Submitted April 11, 1911.   (Docket No. 162.)   Decided April 15, 1912.

Bill by Mary A. Tierney against Patrick Tierney for divorce.   From a decree dismissing complainant's bill, she appeals.   Affirmed.

*Walsh & Walsh*, for complainant.

*P. H. Phillips*, for defendant.

BIRD, J.   Complainant charged defendant, in her bill of complaint, with the excessive use of intoxicating liquors, with extreme cruelty, and with being impotent at the time of the marriage, and prayed for a decree of divorce and alimony.   The defendant denied these allegations, and after a very full hearing the trial court denied the relief prayed and dismissed complainant's bill.   Complainant now appeals to this court.

The parties to this controversy were married in April, 1905, and separated in September, 1908.   They lived about 35 miles from each other, but were unacquainted until a short time before their marriage.   At the time of their marriage, complainant was 27 years of age, and the defendant was a bachelor, 49 years of age, who was reputed to have considerable property.   Soon after their marriage, they went to live on defendant's farm, and remained there until they separated.

We are not convinced by the testimony that the charge of the excessive use of intoxicating liquors is sustained. Considerable testimony was offered on the part of complainant to the effect that defendant, while at home and

in the village, where he often went on business, was frequently intoxicated. This testimony was given by complainant, her relatives, and servants who had been employed by them. The defendant brought into court a large number of witnesses, composed of the family physician, business people, and also his near neighbors, who testified that they had never seen him drunk. Several of them admitted that defendant indulged to some extent, but denied that they had ever seen him under the influence of liquor. It is hardly probable that the defendant could have used intoxicating liquors to the extent testified to by complainant and some of her witnesses without the fact being known by his near neighbors and the people with whom he was frequently doing business. We think the testimony falls far short of establishing the fact that he was an habitual drunkard.

And neither do we think the charge of extreme cruelty is sustained. In this connection, complaint is made of defendant's intoxication and his indifference towards her. On one occasion, she complains, he refused her money when she was in need of it; and at another time there was some ill feeling engendered and harsh words followed over her authority to sign defendant's name to a check in payment of a piano. There were many instances in defendant's relations with complainant to merit criticism, but little that would amount to extreme cruelty. The nearest approach to it was his lack of affection and attention. As to this, we think she is in no position to complain. He manifested very little affection for her before marriage. The short acquaintance and courtship had more of a business air than a sentimental one. With the knowledge that he was 22 years older than she, that he was not her equal socially, and that their educations, tastes, and habits of life were widely variant, she entered into the marriage. The testimony leads us to believe that the inducement which led her into the marriage was a mercenary rather than a sentimental one. If this is so, did she not get all she contracted for? He furnished her a good

home, provided well for it, bought her a $500 piano, employed servants when she was ill, and provided care for her in the hospital at Detroit at different times, equal in all to nearly one-fifth of the time they lived together. In these respects, defendant seems to have discharged his duty fairly well. As to the charge of lack of affection and attention, we are not inclined to relieve her from the position in which she deliberately placed herself.

The charge of impotency is more difficult of solution. The conduct of defendant immediately following wedlock in his refusal to consummate the marriage is very unlike the conduct of a normal man. His own explanation of this conduct is not satisfactory. His explanation of his later conduct is more reasonable. He charges that the fault was complainant's, and the trial court was led to believe that he is right in this claim from the character of the operation which complainant had performed at the hospital. Aside from the testimony of the parties themselves, the testimony upon this phase of the case is very meager. He denies that he is impotent, and testifies the fault was hers. The character of the operation lends some credence to his claim that the refusal was upon her part, because the act was painful to her. The burden of proof, however, was upon her to establish the fact that the fault was his, and not hers. We are not so certain that she has discharged this duty that we feel like disagreeing with the trial court, who had the advantage of seeing and hearing the parties testify.

The decree of the trial court will be affirmed, without costs to either party.

MOORE, C. J., and BLAIR, STONE, and OSTRANDER, JJ., concurred.