SMITH *v.* SMITH.

DIVORCE—DRUNKENNESS—EXTREME CRUELTY.

Evidence having a tendency to show that defendant during one summer drank intoxicating liquors more freely than he ought, resulting in his becoming quarrelsome and offensive on two or three occasions, that he took hold of complainant and shoved her on one such occasion and threatened to shoot her, but not within her hearing, did not warrant a decree for divorce.[1]

Appeal from Huron; Beach, J. Submitted June 4, 1912. (Docket No. 8.) Decided October 1, 1912.

Bill by Addie Smith against Robert Smith for divorce. From a decree for defendant, complainant appeals. Affirmed.

[1] As to who is an habitual drunkard within the meaning of divorce laws, see note in 6 L. R. A. (N. S.) 914.

*George M. Clark* and *Robert E. McKisson*, for complainant.

*Paul Woodworth* (*Wilbur J. Beach*, of counsel), for defendant.

BIRD, J. The complainant filed her bill of complaint praying for a decree of divorce from the defendant on the grounds of extreme cruelty and habitual drunkenness. After a hearing in which both sides were heard, the trial court denied the relief sought and dismissed the bill.

The parties were married in March, 1890, and went to live on defendant's farm four miles from Caseville, in Huron county, where they resided for nearly 20 years. Complainant is now 55 years of age, and defendant is nearly 60. Both parties had been previously married, and at the time of their marriage complainant had one child and defendant had seven, whose ages ranged from 4 to 16 years. By the marriage two more children were born to them. They have lived on this farm and raised all the children and accumulated property worth between twelve and fifteen thousand dollars.

Not much complaint is made about defendant's conduct prior to the winter of 1908 and 1909. The principal charges of cruelty and drunkenness are laid after that date. The only act of personal violence complained of was in the summer of 1909. Defendant had been drinking, and during a quarrel with complainant he took hold of her and shoved her away from him. The hired man was present, and he persuaded defendant to leave her and go to the barn with him. Later in the day, while annoyed about some rumors going about the neighborhood concerning him, he inquired of the hired man where the rifle was, and remarked that if he could find it a funeral procession would leave the yard before morning. This threat, however, was not made to complainant, nor in her hearing. The complainant and her daughter gave testimony tending to show that during the summer of 1909 defendant indulged to excess in intoxicating liquors; that on Sat-

urday night he would go to Caseville, and nearly always returned to his home at a late hour in a state of intoxication. Other witnesses outside of the family gave testimony that they had seen him under the influence of liquor, but not frequently. The charges of drunkenness were denied by defendant and by other members of his family; and several business people in Caseville, who saw him frequently and did business with him, testified that they had never seen him drunk. Defendant admitted that he had indulged in malt liquors ever since and before his marriage to complainant, but denied the acts of drunkenness with which he was charged.

We think it appears from the record that defendant drank more freely than he ought during the summer of 1909, and that at some of these times he was disagreeable and quarrelsome, and on two or three occasions he was very offensive to complainant; but we do not think that the proofs make out a case of habitual drunkenness, nor of extreme cruelty, under the statute. *Meathe* v. *Meathe,* 83 Mich. 150 (47 N. W. 109); *Tierney* v. *Tierney,* 169 Mich. 600 (135 N. W. 654); *Lentz* v. *Lentz,* 171 Mich. 509 (137 N. W. 229).

We are also impressed that when complainant went away to Cleveland in the fall of 1909 she did not regard defendant's conduct as seriously as she does now. Complainant's life had been a hard and busy one, looking after her work and caring for her large family, and in the early summer of 1909 she showed signs of failing health; and in the fall of that year she went to Cleveland to remain with a daughter for a time to secure rest and Christian Science treatment. When she went away, she was on good terms with defendant. She remained in Cleveland until July, 1910, and during her stay she wrote several letters to defendant, in which she spoke of and discussed subjects in which they were mutually interested, such as her health, the children, the improvements that were being made in the house at Caseville, and on several occa-

sions urged defendant to come down to Cleveland for a visit. In these letters she addressed him affectionately and closed them by sending her love to him and the children. It is more than probable that when complainant returned to Caseville in July, 1910, she would have gone to her home and resumed her marital relations, had not certain rumors reached her as soon as she arrived that defendant had been paying undue attention to his housekeeper. These rumors were very disquieting to complainant and gave rise to many suspicions in her mind of improper conduct, and she refused to go to her home and later commenced this suit. We have read with care these reports and what gave rise to them, together with the explanation of the parties; but, without going over them in detail, it is sufficient to say that the testimony does not furnish a reasonable basis from which inferences of improper conduct ought to be drawn. The housekeeper was the wife of defendant's cousin. The husband lived at defendant's home, with his wife and children, most of the time complainant was away. They came before complainant went away, and their coming had her consent.

The trial court evidently thought that these people, after living together for nearly 20 years and accumulating a nice property and raising a large family, should not be legally separated at a time in complainant's life when her ill health would not permit her to see and judge of things clearly and as they were. We agree with him, and his decree will be affirmed. No costs will be allowed to defendant.

Moore, C. J., and Steere, McAlvay, Brooke, Stone, and Ostrander, JJ., concurred.